ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ALFREDO ARES RUIZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | KLRA202300547 | *Revisión Judicial* procedente del Departamento de Educación<br><br>Caso Núm.: 2009-08-0270<br><br>Sobre: Retención |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, la Jueza Santiago Calderón y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de marzo de 2024.

Comparece el Sr. Alfredo Ares Ruiz (en adelante, señor Ares Ruiz), por medio de un recurso de *Revisión Judicial*. Solicita que revoquemos una *Resolución en reconsideración* emitida por la Oficina de Apelaciones del Sistema de Educación (en adelante, OASE) el 21 de septiembre de 2023. En su resolución la OASE deja sin efecto una *Resolución* emitida el 30 de junio de 2023 por falta de jurisdicción para continuar los procedimientos al amparo del *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. sec. 2101 (2016) (en adelante, PROMESA).

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución en reconsideración* emitida por la Oficina de Apelaciones del Sistema de Educación.

**I.**

El 12 de agosto de 2009, el señor Ares Ruiz presentó ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (en adelante, CASP) un *Escrito en*

---

[1] Mediante Orden Administrativa TA-2023-212 de 6 de diciembre de 2023, se designó al Hon. José I. Campos Pérez en sustitución de la Hon. Eileen J. Barresi Ramos.

Número Identificador

SEN2024 _____

*Apelación.*[2] Dicho escrito buscaba que se revocara la decisión tomada por el Departamento de Educación del Estado Libre Asociado de Puerto Rico (en adelante, DE) en cuanto a la destitución del señor Ares Ruiz como Maestro de Música de la Escuela Libre de Música Juan Morel Campos del Distrito Escolar de Ponce II, por alegada conducta indebida e inmoral contra un estudiante.[3]

Luego de varios incidentes procesales, el 31 de mayo de 2013 la CASP emitió una *Orden* resumiendo los procedimientos y pautando la fecha de su vista pública para el 8 de agosto de 2013.[4] Así las cosas, se celebró la vista pública ante la CASP el 8 de agosto de 2013. En la misma se presentaron los testimonios de diferentes partes y se pautó la continuación de la vista para el 16 de noviembre 2013.[5] No obstante, y a pesar de haber sido pautada para el 16 de noviembre de 2013, la vista fue transferida para el 21 de noviembre de 2013.[6]

Así las cosas, y luego de culminada la vista, el señor Ares Ruiz presentó varios escritos ante la CASP. En síntesis, el señor Ares Ruiz presentó cinco escritos solicitando se sometiera el caso, cursando desde el 20 de diciembre de 2013 hasta el 22 de mayo de 2017.[7]

Inconforme tras no recibir algún tipo de acción por la CASP, el señor Ares Ruiz presentó un recurso de *Mandamus* ante el Tribunal de Primera Instancia sala de San Juan (en adelante, TPI) el 27 de junio de 2017.[8] En síntesis, el señor Ares Ruiz solicitó al

---

[2] Apéndice de la parte recurrente, en el Anejo III págs. 37-44.
[3] Apéndice de la parte recurrente, en el Anejo III págs. 37-44.
[4] Apéndice de la parte recurrente, en el Anejo III págs. 61-63.
[5] Apéndice de la parte recurrente, en el Anejo III págs. 64-65.
[6] Apéndice de la parte recurrente, en el Anejo III págs. 66-67.
[7] Apéndice de la parte recurrente, en el Anejo III págs. 68-106.
[8] Apéndice de la parte recurrente, en el Anejo III págs. 21-34.

TPI que le ordenara a la CASP a emitir resolución sobre el caso ante su consideración.[9]

El 24 de julio de 2017, la CASP compareció ante el TPI mediante una *Moción en cumplimiento de orden*.[10] En resumen, la CASP solicitó que se desestimara el recurso de *Mandamus*, pues la CASP había emitido una *Orden* el 29 de junio de 2017 solicitando la celebración de nuevas vistas, ya que no contaba con las regrabaciones de las vistas celebradas para poder adjudicar el caso.[11] El 24 de agosto de 2017 el TPI emitió una *Sentencia* desestimando la causa de acción, pues el remedio solicitado no era justiciable, ya que al CASP no contar con las grabaciones de las vistas celebradas, no podría adjudicar la controversia.[12]

Así las cosas, el DE presentó ante la CASP una *Moción urgente en oposición a vista y/o solicitando la paralización de los procedimientos ante el foro por la radicación de la quiebra del Gobierno de Puerto Rico bajo el Título III de la Ley PROMESA*.[13] En dicho escrito, solicitó que se dejaran sin efecto la celebración de unas vistas pautadas por la CASP, pues a la luz de la Ley PROMESA todos los procedimientos contra el Estado estaban paralizados.[14] La CASP emitió una *Orden* el 22 de enero 2018 donde suspendió las vistas pautadas y le requirió al señor Ares Ruiz expresarse sobre el asunto.[15] El 20 de febrero de 2018, el señor Ares Ruiz presentó su *Replica* en la cual se opuso a la solicitud de paralización pues, a su entender, la paralización de la Ley PROMESA solo aplicaba a los Tribunales y no a los

---

[9] Apéndice de la parte recurrente, en el Anejo III págs. 21-34.
[10] Apéndice de la parte recurrente, en el Anejo IV págs. 107-118.
[11] Apéndice de la parte recurrente, en el Anejo IV págs. 107-124.
[12] Apéndice de la parte recurrente, en el Anejo V págs. 126-129.
[13] Apéndice de la parte recurrida, en el Anejo 1 págs. 1-7.
[14] Apéndice de la parte recurrida, en el Anejo 1 págs. 1-7.
[15] Apéndice de la parte recurrida, en el Anejo 1 pág. 8.

procedimientos administrativos, además, añadió que el Estado Libre Asociado de Puerto Rico no era parte del mismo.[16]

Pese a lo anterior, la CASP le notificó a las partes el *Traslado a la Oficina de Apelaciones del Sistema de Educación.*[17] Luego de varios incidentes procesales ante la OASE y la celebración de las vistas, la OASE emitió una *Resolución final* el 30 de junio de 2023.[18] En tal resolución la OASE declaró Ha Lugar la apelación presentada por el señor Ares Ruiz, pues entendió que los hechos alegados por el exestudiante no ocurrieron, por lo que restituyó al señor Ares Ruiz a su antiguo puesto, requirió que se activara nuevamente su licencia de maestro y se le pagara la totalidad de los ingresos dejados de percibir desde su despido.[19]

Inconforme con tal resolución, el DE presentó el 19 de julio de 2023 una *Moción en reconsideración.*[20] En su escrito, arguyó, entre otras cosas, que se debió declarar No Ha Lugar la apelación pues conforme a la Ley PROMESA los procedimientos contra el Estado estaban paralizados.[21] El 3 de agosto 2023, el señor Ares Ruiz presentó su *Moción en oposición a moción de reconsideración y solicitando se sostenga resolución emitida.*[22] En su escrito argumentó que procedía que se sostuviera la resolución emitida y se declarara No Ha Lugar la moción presentada por el DE, pues luego de dos años estando el asunto ante la OASE, nunca se ha levantado la paralización.[23]

Finalmente, el 21 de septiembre de 2023, la OASE emitió una *Resolución en Reconsideración.*[24] En síntesis, la OASE concluyó que carecía de jurisdicción para atender el asunto

---

[16] Apéndice de la parte recurrida, en el Anejo 1 págs. 9-13.
[17] Apéndice de la parte recurrente, en el Anejo VI págs. 130-131.
[18] Apéndice de la parte recurrente, en el Anejo II págs. 11-20.
[19] Apéndice de la parte recurrente, en el Anejo II págs. 11-20.
[20] Apéndice de la parte recurrente, en el Anejo XVIII págs. 187-193.
[21] Apéndice de la parte recurrente, en el Anejo XVIII págs. 187-193.
[22] Apéndice de la parte recurrente, en el Anejo XIX págs. 194-202.
[23] Apéndice de la parte recurrente, en el Anejo XIX págs. 194-202.
[24] Apéndice de la parte recurrente, en el Anejo I págs. 1-10.

plasmado en la apelación por la paralización de los procedimientos que conlleva la Ley PROMESA, por lo que procedía paralizar el pleito y archivar el caso hasta tanto el foro federal que atiende el asunto de la quiebra en Puerto Rico dispusiera lo contrario. De igual forma, la OASE también arguyó que el señor Ares Ruiz no presentó un "proof of claim" y no estaba eximido de presentarla conforme a la Orden de Confirmación, por lo que procedió a dejar sin efecto la *Resolución final* emitida el 30 de junio de 2023 y se decretó el cierre del caso.[25]

Inconforme con tal resolución, el 24 de octubre de 2023 el señor Ares Ruiz acudió ante nos mediante un *Recurso de revisión.* En su escrito, esboza los siguientes señalamientos de error:

> **Primer Error**: Erró la Honorable Oficina de Apelaciones Sistema de Educación al declararse sin jurisdicción para continuar los procedimientos al amparo de la Ley PROMESA y en su consecuencia decretar el archivo administrativo del caso.

> **Segundo Error**: Actuó de mala fe y cometió incuria el apelado-recurrido a través de su representante legal la Lcda. Arlene López Rodríguez al litigar activamente el caso de epígrafe y esperar hasta la emisión de la resolución final para levantar la defensa de falta de jurisdicción.

El 27 de noviembre de 2023, el Gobierno de Puerto Rico, sin someterse a la jurisdicción, presentó un *Escrito en cumplimiento de resolución.* Contando con la comparecencia de ambas partes, procedemos a resolver.

## II.

### *Jurisdicción*

La jurisdicción se refiere al "...poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias". *Pueblo v. Rios Nieves,* 209 DPR 264, 273 (2022); *Pérez et al. v. Lares Medical et al.,* 207 DPR 965 (2021). El Tribunal Supremo ha expresado que los tribunales deben ser guardianes de su

---

[25] Apéndice de la parte recurrente, en el Anejo I págs. 1-10.

jurisdicción y no poseen discreción para atribuirse o asumir jurisdicción donde no la tienen. *Pueblo v. Rios Nieves*, supra; *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 104–105 (2013). De igual forma, la falta de jurisdicción no puede ser subsanada por acuerdo entre las partes. *Pueblo v. Rios Nieves*, supra; *Pérez Soto v. Cantera Pérez, Inc. et al.*, supra. Si un tribunal carece de jurisdicción sobre el asunto ante su consideración, "solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia". *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652 (2014). De lo contrario, si un tribunal dicta una sentencia cuando carece jurisdicción sobre las partes o sobre la materia, emite un dictamen *ultra vires. Pueblo v. Rios Nieves*, supra; *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).

### *Puerto Rico Oversight, Management, and Economic Stability Act*

El Artículo IV, Sección 3 de la Constitución de Estados Unidos de América le otorga al Congreso de Estados Unidos la autoridad para, entre otras cosas, poder adoptar cualquier ley o reglamento necesario con relación a los territorios y propiedades de Estados Unidos. A la luz de esta facultad y con el fin de crear un "Financial Oversight and Management Board" para la restauración de la deuda de Puerto Rico, el Congreso de Estados Unidos aprobó el *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. sec. 2101 (2016) (en adelante, PROMESA).

La paralización automática de los procedimientos contra el deudor queda consignada en la sección 301 (a) de la Ley PROMESA, incorporando las secciones 362 y 392 de *Código Federal de Quiebras*. 48 U.S.C. sec. 2161(a) (2016); *Lab. Clínico et al. v. Depto. Salud et al.*, 198 DPR 790 (2017). La implementación de la Ley PROMESA trajo consigo la paralización automática de todo pleito, instado en el pasado o presente, donde se reclama un

remedio monetario contra el Gobierno de Puerto Rico. *Requena Mercado et als. v. Policía de PR*, 205 DPR 285, 290 (2020); *Depto. de Hacienda v. COTIARI*, 203 DPR 1049 (2020). El propósito detrás de la paralización automática, entre otras cosas, es impedir:

> ...el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra...[26]

Los efectos de la paralización se manifiestan "desde que se presenta la petición de quiebra hasta que recae la sentencia final y no se requiere una notificación formal para que surta efecto". *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 491 (2010). De igual forma, la paralización afecta a los tribunales estatales despojándolos de jurisdicción automáticamente sobre todo litigio que afecte los asuntos financieros del deudor. *Marrero Rosado v. Marrero Rosado*, supra. En el caso de Puerto Rico, conforme ha resuelto el Tribunal Supremo, "...tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos ante nos...". *Lab. Clínico v. Depto. Salud*, supra en la pág. 792.

El 18 de enero de 2022, el foro federal confirmó el *Plan de Ajuste* presentado por el Gobierno del Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico por vía de la Junta de Control Fiscal, mediante el *Order and judgment confirming modified eight amended title III joint plan of adjustment of the commonwealth of Puerto Rico, the  employees retirement system of the Government of the Commonwealth Of Puerto Rico, and the Puerto Rico Public Buildings Authority* (en adelante, *Orden de*

---

[26] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 491 (2010) (discutiendo la paralización conforme el *Código Federal de Quiebras*).

*Confirmación*).[27] En el párrafo 59 de la *Orden de Confirmación* se discute el asunto referente al *injunction* permanente, en lo pertinente, establece:

> 59. **Injunction on Claims**. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.[28]

En otras palabras, la *Orden de Confirmación* establece un *injunction* permanente que mantiene paralizadas todas las

---

[27] *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813 (2022).
[28] *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813, párrafo 59 (2022).

reclamaciones, presentes, pasadas y futuras contra el Gobierno de Puerto Rico y de igual forma, los acreedores quedan impedidos de empezar cualquier procedimiento en contra del Gobierno de Puerto Rico.

Respecto a las descargas, la *Orden de Confirmación* en su párrafo 56, incisos (a) y (b) expone lo siguiente:

56. Discharge and Release of Claims and Causes of Action.

(a) Except as expressly provided in the Plan or herein, **all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases**, **the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of each of the Claims or Causes of Action**; provided, however, that, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and each of their respective Related Persons by any Creditors of the Debtors. **Upon the Effective Date and independent of the distributions provided for under the Plan, the Debtors and Reorganized Debtors shall be discharged and released from any and all Claims, Causes of Action, and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code and section 407 of PROMESA**, **whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and section 407 of PROMESA (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan**. For the avoidance of doubt, **nothing contained in the Plan or herein shall release, discharge, or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds**, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action

against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.
(b) Except as expressly provided in the Plan or herein, **all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective employees, officials, Assets, property, rights, remedies, Claims, or Causes of Action of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any and all interest accrued on such Claims, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of each of the Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilities**. In accordance with the foregoing, except as expressly provided in the Plan or herein, **this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt, or liability.** As of the Effective Date, and in consideration for the distributions or other value provided pursuant to the Plan, each holder of a Claim in any Class under the Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property, all such Claims.[29] (Énfasis suplido)

Los párrafos anteriores expresan que el Gobierno de Puerto Rico queda liberado de todo reclamo o causa de acción anteriores a la vigencia del *Plan de Ajuste* adoptado.

### III.

En su *Recurso de Revisión*, la parte recurrente señala que erró la OASE al declararse sin jurisdicción para continuar los procedimientos al amparo de la Ley PROMESA y al decretar el archivo administrativo del caso. De igual forma, señala que actuó de mala fe y cometió incuria el DE a través de su representante

---

[29] *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813, parrafo 56 (2022).

legal, la Lcda. Arlene López Rodríguez al litigar activamente el caso de epígrafe y esperar hasta la emisión de la resolución final para levantar la defensa de falta de jurisdicción. No le asiste razón a la parte recurrente, veamos.

Según surge de la *Orden de confirmación* emitida el 18 de enero de 2022 por el United States District Court for the District of Puerto Rico en su párrafo 56, anteriormente citado, el Gobierno de Puerto Rico queda liberado de todo reclamo o causa de acción ***anteriores*** a la vigencia del *Plan de Ajuste* adoptado.[30] Además, según el párrafo 59 de la *Orden de Confirmación,* anteriormente citado, existe un *injunction* permanente que mantiene paralizadas todas las reclamaciones, presentes, pasadas y futuras contra el Gobierno de Puerto Rico y de igual forma, los acreedores quedan impedidos de empezar cualquier procedimiento en contra del Gobierno de Puerto Rico.[31]

En el caso ante nuestra consideración la apelación presentada por el recurrente contra el DE es anterior a la vigencia de la *Orden de Confirmación,* data del año 2009.[32] Conforme con los párrafos anteriormente aludidos de la *Orden de Confirmación,* la parte recurrente tiene una acción contra el Gobierno de Puerto Rico que ha sido descargada.[33] Al no existir un "proof of claim" y al estar descargada la reclamación de la parte recurrente contra el Estado, actuó correctamente la OASE al concluir que carecía de jurisdicción sobre el asunto.

Así las cosas, toda vez que la OASE carecía de jurisdicción para atender el asunto y, la falta de jurisdicción se puede plantear

---

[30] *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813, párrafo 56 (2022).
[31] *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813, párrafo 59 (2022).
[32] Apéndice de la parte recurrente, en el Anejo III págs. 37-44.
[33] Véase *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,* No. 17 BK 3283-LTS, Doc#:19813 (2022).

en cualquier momento, nos parece inmeritorio entrar en la discusión sobre el segundo señalamiento de error.

**IV.**

Por los fundamentos anteriormente expuestos, confirmamos la *Resolución en reconsideración* emitida por la Oficina de Apelaciones del Sistema de Educación.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones